## UNITED STATES v. SALLI et al.
### No. 75.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1940.

Salvatore C. Salvo, of Buffalo, N. Y. (Jules C. Randal and David C. Adams, both of Buffalo, N. Y., of counsel), for appellants.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Robert M. Hitchcock, of Buffalo, N. Y., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The defendants appeal from a conviction upon three counts: operating an illicit still; making alcohol; a conspiracy to do both. The appeal raises three issues: (1) whether the convictions were founded upon unlawful searches; (2) whether the evidence was sufficient to support the verdict; and (3) whether the trial was unfair. The facts proved were in substance as follows. The defendant Matwizkow occupied a farm some 18 miles outside the City of Buffalo, on which there was a house and barn. Two revenue agents, who were already watching the house of the defendant Salli in Buffalo, trailed a Dodge car driven by another of the defendants, Valenti, from there to Matwizkow's farm. When Valenti turned in at the driveway the two agents went to a telephone and summoned two other agents in Buffalo to join them. Upon the arrival of these two all four left the road, crossed the fields and stationed themselves in groups of two where they could observe the house and the barn; one group was about 600 feet away, the other about half that distance. They could all smell fermenting "mash," and saw two men come out of the barn carrying what they recognized as copper columns about 6 feet long and 18 inches in diameter, such as are used in a still. One of the agents identified one of these men as the defendant Gerfarco. The two men put the columns into the rear of the Dodge car, and at this point the two agents, who had arrived first, went back to intercept the car containing the columns. The other agents then saw Salli leave the barn and get into the Dodge car with another man who later turned out to be Valenti. Together they left the farm and were arrested by the agents who were lying in wait for them on the road. The columns were found in the car and turned out to be what the agents had thought them. After bringing back Salli and Valenti to the farm all the agents searched the barn and found a still set up with a large amount of fermenting mash. Steam was up in the boiler, but no distilling could go on because of the columns which had been taken out.

The theory of the defence is that the agents had no sufficient cause for searching the Dodge car and arresting Salli and Valenti, and afterwards for entering and searching the barn. Especially, that even though the search of the car had been lawful, they should have got a warrant to search the barn, since there was no chance that anything could be taken from it while two agents remained to watch. As to the search of the car this argument is clearly without foundation; Salli and Valenti were apparently making away with part of a still which was in the barn, and the agents had no chance to get a warrant; they were obliged to make the arrest on the spot or the evidence would disappear. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. The four agents all united in believing that the columns were parts of a still; they had had experience in such matters and correctly recognized them for what they were. True, they could not be sure, but they did not have to be; what they saw and what they smelt gave them reasonable ground for their conclusion. After finding the columns in the car there could be no further doubt as to what was going on in the barn, and the only question is whether they were obliged nevertheless to get a search warrant. The original unlawful trespass on the farm was immaterial. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. It is indeed true that the failure to take out a warrant when there was no danger in delay has been many times treated as important, if not critical, in deciding whether the search was reasonable. Go-Bart Importing Co. v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374; Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951; In re Milburne, 2 Cir., 77 F.2d 310, 311; United States v. Edelson, 2 Cir., 83 F.2d 404, 405; United States v. Kind, 2 Cir., 87 F.2d 315, 316; United States v. Preisen, 2 Cir., 96 F.2d 138; In re Rose, D.C., 32 F.Supp. 103, 104. But the defendants may not raise the question here because they waited until the trial came on—four months after the indictment was found—before they raised it. In Agnello v. United States, 269 U.S. 20, 34, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409, the Supreme Court did indeed hold that such delays need not forfeit the privilege—a ruling somewhat hard to reconcile with Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654—but in Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186, its last word, it held that the accused must show some excuse for substantial delay after he became aware of the facts. Six Circuits are now in accord that this is the law, though apparently we have not before passed upon the point. Day v. United States, 8 Cir.,

31 F.2d 71; Brink v. United States, 6 Cir., 60 F.2d 231; Durkin v. United States, 1 Cir., 62 F.2d 305; Peters v. United States, 9 Cir., 97 F.2d 500; Dunn v. United States, 10 Cir., 98 F.2d 119, 117 A.L.R. 1302; Bennett v. United States, 70 App.D.C. 76, 104 F.2d 209. Moreover, while it was not indeed discussing a constitutional privilege, which perhaps may make a difference, in Nardone v. United States, 308 U.S. 338, 341, 342, 60 S.Ct. 266, 84 L.Ed. 307, the Supreme Court expressed a very positive opinion that delay may effect a surrender. There is every reason why it should do so when the facts are all available in season; nothing is more unfair than to leave open a preliminary inquiry which will make the whole prosecution abortive, and thus to put the authorities and their witnesses to the trouble and expense of useless preparation. We hold therefore that the judge in the case at bar was within his powers in refusing to entertain the motions. (Incidentally Matwizkow alone could have availed himself of the objection anyway; he was the only one in possession of the barn, and his was the only constitutional privilege violated. Connolly v. Medalie, 2 Cir., 58 F.2d 629; In re 14 East Seventeenth St., 2 Cir., 65 F.2d 289, 290; Mello v. United States, 3 Cir., 66 F.2d 135; Schnitzer v. United States, 8 Cir., 77 F.2d 233, 235; United States v. Edelson, 2 Cir., 83 F.2d 404, 406.

■ There was enough evidence to hold all the accused, for they were all shown to have been busied about the illicit still. The evidence is strongest against Matwizkow because it was set upon his land, and he had recently had drilled a well upon it to furnish water for it. Valenti had bought a well pump, which was delivered at the farm. Moreover, it was he who was driving the Dodge car with the pieces of column in it when he was arrested, and he tried to conceal their real character. The agents saw Gerfarco carrying the columns from the barn to the car and loading them into the back. As to Salli, a piece of cardboard carton was found in the barn being used as a light screen on which were his name and address, a particularly telling connection with the still. Moreover, he was 18 miles from his home without conveyance other than the Dodge car; he came out of the barn after the car was loaded and Valenti drove him off. They were engaged upon some errand concerning the still, and Valenti had left his house only a few hours before. None of these men are in a position to argue as was successfully done in United States v. De Vito, 2 Cir., 68 F.2d 837, that they had merely dropped in casually upon the farm as visitors.

■ The complaints as to the conduct of the trial are insubstantial. No objection was taken to the charge, and the case was so simple and the guilt so clear that the charge was not of much importance anyway. The only occurrences worth notice are some answers of the revenue agents that Salli and Gerfarco had been previous violators of the liquor laws. In three of the four instances complained of, the attorney for the defence had called for the answer, and although in the third the agent volunteered it, the judge at once struck it out; certainly he was not bound to declare a mistrial, the statement added very little to what was already in evidence.

Convictions affirmed.