## UNITED STATES v. KAPLAN.
### No. 351.

Circuit Court of Appeals, Second Circuit.
May 10, 1937.

Maxwell Shapiro, of New York City (Alvin I. Perlmutter, of New York City, on the brief), for appellant.

Leo J. Hickey, U. S. Atty., of Brooklyn (Vine H. Smith, of Brooklyn, of counsel), for the United States.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The defendant was convicted of maintaining a still in a dwelling in the residence section of Brooklyn. No question is, or conceivably could be, made of his guilt; the only complaint is as to the method by which the officers procured the necessary evidence; the case revives a question very actively debated while the Eighteenth Amendment was in existence. The defendant and his wife had rented a one-family dwelling in Brooklyn in April, 1936, complaints against which had reached the ears of revenue officers before August thirteenth of that year. On that day four of them upon approaching the house smelt "fermenting mash emanating from this building." As they drew nearer, "the odor became stronger. As the distance increased * * * it became weaker." That is literally the whole of the evidence justifying their entry. They rang the bell, the defendant's wife came to the door, formally they arrested her, though without really taking her into custody, and then went to the attic where there was a still in operation. While they were there the defendant rang up his wife on the telephone, and, learning his whereabouts, the officers went to the place, arrested him and took him to the police. Nobody pretends that their search of the premises was by permission of the wife, who lived with her husband on the ground floor.

Smell is indeed a sense like any other, and, though doubtless much atrophied, it remains one of the means by which we apprehend the outside world. No court has ever refused to deny it all cognitive reliability, but in Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951—the only declaration of the Supreme Court upon the question—it was held to be not enough alone to support a search. The inferior courts have in general treated this as more than a ruling ad hoc. Thus in Crank v. United States (C.C.A.) 61 F.(2d) 981, and Leubbert v. United States (C.C.A.) 74 F.(2d) 357, the Eighth Circuit held it to lay down a general rule, though in Catagrone v. United States (C.C.A.) 63 F.(2d) 931, by a divided court they appear to have held otherwise. Kelley v. United States, 61 F.(2d) 843, 86 A.L.R. 238 (C.C.A.8); Pong Ying v. United States, 66 F.(2d) 67 (C.C.A.3); Parks v. United States, 76 F.(2d) 709 (C.C.A.5); Cardinal v. United States, 79 F.(2d) 825 (C.C.A.6); and Papani v. United States, 84 F.(2d) 164 (C.C.A.9), are all clearly distinguishable, for in each the officers had more evidence than what they got through their noses. The same is true of Wakkuri v. United States, 67 F.(2d) 844 (C.C.A.6), though Taylor v. United States was not mentioned. Letman v. United States, 58 F.(2d) 1082 (C.C.A.3), is not reported at length, but it almost certainly treated the decisions as of general application. We have considered the question three times. In Re Phoenix Cereal Beverage Co., 58 F.(2d) 953, we held a search unreasonable though supported by much more than smell, and in United States v. Lee, 83 F.(2d) 195, we expressly held that there must be more. United States v. Kind (C.C.A.) 87 F.(2d) 315, is in a different class; the offense consisted of possession of unstamped alcohol, and the presence of alcohol on the premises, even if smell were enough to detect it, did not prove the case.

These are all the decisions we can find since Taylor v. United States; there is a substantial agreement that it meant to lay down a general rule. Indeed, it is impossible to read it otherwise, for the decision necessarily turned upon the reason given. Nobody questioned that the officers in fact did smell the whisky; but that did not "alone strip the owner * * * of

constitutional guarantees against unreasonable search." It is true that there is "no formula for the determination of reasonableness;" (Go-Bart Importing Co. v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 158, 75 L.Ed. 374), but the privilege is not left to the whimsy of the moment. Not all the facts of every situation are relevant; and the process of excluding those which shall not count is a jural act, as much as though the standard was more general. In such cases there are indeed many standards, so many that they cannot be comprehended in a single statement; but each is as imperative as a precedent as though there were one. In the case at bar there was even less support for the privilege than in Taylor v. United States, for the wife's arrest added nothing; it was as unwarranted as the search itself. We are told that unless such evidence will serve, it will be impossible to suppress an evil of large proportion in the residential part of Brooklyn. Perhaps so; any community must choose between the impairment of its power to punish crime and such evils as arise from its uncontrolled prosecution. But the danger is not certain, for the officers could have applied for a warrant which—as was at least intimated in Taylor v. United States—might then have been valid. It takes time to break up a still and take the parts away; if the attempt were made, it would discover itself immediately. One or more officers could have watched, while the others went to a judge or commissioner, whose action would at least have put a different face upon their subsequent proceedings.

Judgment reversed.